We will hear argument next in case number 181836, Wireless Protocol Innovations against Thank you, Your Honors, and may it please the Court, in this appeal, the Board erred with respect to each of its final written decisions, both in terms of the lack of substantial evidence to support its findings and in terms of errors of law with respect to claim construction. With respect to the 991 patent, the Board ignored WPI's argument and evidence that ABI-NACIF does not meet two limitations of Claim 1. The Board relied on ABI-NACIF and its Figure 9 to make a finding that is irrelevant to satisfying the claim limitations. ABI-NACIF's Figure 9 instead shows that the actual requirements of the limitations are not met. The Board's finding asked to send, in turn, rested on the Board's... Rather than summarizing at a high level of generality, which is not getting to the concrete things, just go back to the starting point. You've got two related claim limitations that you think ABI-NACIF does not meet. What are they and why doesn't ABI-NACIF meet them? So there is a transitioning. In fact, the order is the other way compared to what we argued, but we think that it's better illustrated in the order that we argued it. In the order of the claims, there's a requirement of transmitting the request from the client device to the base station for a bandwidth grant while the client device remains in what's called the grant pending absence state. So there's a requirement that you be in a particular state when you make this request. And then there's a further requirement that you transition, that the client device transitions to what is then called the grant pending state only after not only a request has been made, but a bandwidth grant has been received at the client device. And what's going on with ABI-NACIF is it simply has a different configuration and teaching as to the states and the transitions that it makes. And I think the easiest way to understand this is to look at Figure 9 and to also look at the relevant teachings of ABI-NACIF, which I can direct you to. So in Figure 9, what we see is that... Critical question is at the bottom of that triangle in Figure 9, where there's an arrow pointing to the active state from the inactive state, and that arrow is labeled non-contention request. Right. So in Figure 9 of ABI-NACIF at the bottom, there's an arrow from inactive to active non-contention request, but there's also an arrow going back from active to inactive request satisfied. And in fact, the board relied on the request satisfied arrow, which was erroneous, and I'd like to detail that. In terms of the transition from inactive to active with a non-contention request, ABI-NACIF itself teaches at Appendix 13.12, quote, when the Mac user receives data to be transmitted, the Mac user transitions into the active state upon receiving a contention-free opportunity to transmit a request. And so there are a couple of things going on there that are really important. The first is that as ABI-NACIF frames it, it's all about having data to send as a starting point. And so in that moment when the client device requires data to send, and it's in the inactive state, and it also receives the opportunity to make a bandwidth grant request, in that moment it moves over to the active state. And that's what the arrow at the bottom shows. And there's a further teaching in ABI-NACIF that's really important on this issue that really helps to understand the distinction between ABI-NACIF's and the patents, which is that if you look at the bottom of 13.12 going into 13.13, and I'm assigned to the appendix here, ABI-NACIF explains that there are three possibilities when the base station gives the client devices an opportunity to make a bandwidth request. One is that no request is made. Another is that a request is made and the grant is successfully given. The first is called idle, the second is called success. But there's a third opportunity, which is that, sorry, third possibility, which is that multiple client devices simultaneously make that request and they run into a collision situation. And in that collision situation, the collision has to be resolved. And so at the top of 13.13 it teaches, on the other hand, if multiple MAC users respond, i.e. if the result of the contention is collision, then the primary station 102 attempts to aid in resolving the collision by providing additional request transmission opportunities. And this is really important because it tells us that even though the transition has been made into active state, the bandwidth grant has not necessarily yet been received. If it's been received, we wouldn't have a collision problem or a need for additional requests or opportunities. This is a key distinction with the claims of the teaching. I guess just looking at figure nine, as I understand what the board was doing with figure nine was interpreting it as having these three states and then all these arrows labeled and basically saying those labels represent conditions. And once those conditions are met or accomplished, then you transition from one state to another. And so, for example, at the very beginning of the whole process, your client is in the inactive state. But then once it makes a contention request, then the client transitions from the inactive state to the contention state. And then once that request is accepted, then the client moves from the That's how I understand figure nine and that's how I understand the board understanding figure nine. And then likewise, when you look at the bottom of the triangle in figure nine, when a client is in inactive state, after it makes a non-contention request, then it transitions from the inactive state to the active state. That's one reading of figure nine. And even accepting that reading, Your Honor, the board's decision would still fail. Because it doesn't say the request has to be granted. That's absolutely correct, Your Honor. The claim... I guess the question is, why wouldn't it be the way this system, this state machine in Avinasiv works? You make a request, the request is granted, and then you get to activate and then you get to start transmitting data in the active state. Why wouldn't it work that way? Yes, and this is why the teaching at the bottom of 1312 and 1313 in the appendix is so relevant to this question. In the 991 patent and its claims, the concept of the state machine order of operations is that you don't move from the grant pending absence state until you've received the bandwidth grant. And that ensures that when you have received the bandwidth grant and you make the transition to the grant pending state, you already have a bandwidth grant, right? There's no possibility of a collision happening where multiple client devices are vying for the same transmission grant because the system has made sure to give you the grant before it allows you to move over into the grant pending state. However, in Avinasiv, where we see in Figure 9 that all it takes is a non-contention request to move into active, Avinasiv at the bottom of 1312 and the top of 1313 teaches that it could be a consequence of that approach, which is that you don't have a bandwidth grant yet, that you run into a collision problem. And then that collision problem needs to be solved. And it does ultimately solve it. Avinasiv teaches that ultimately a bandwidth grant will be given, but it's a different approach to the process of managing a client device that does not have a bandwidth grant, moving into a state where it can start to make contention-free transmissions. In the 991 patent, you enter the state of contention-free transmissions after you already have a bandwidth grant. In Avinasiv, you don't get there yet. You make the transition to the active state, but you may run into a collision. And if you run into a collision, then there's a further process where the collision has to be resolved by the base station. And only then, once it's resolved, do you enter into the contention-free state. So even though you're in the active state, you don't yet get the contention-free opportunity. So it's simply a matter of a difference of architecture. Right. Perhaps I've misunderstood this, but I think one version of the harmless error argument in the red brief is you're just talking about labels. That is, Avinasiv, when it says active, if there's still a contention, a collision state, it's not really the active state. And until that has occurred, that is, until you can actually freely use the channel, it's not really in the counterpart to what your patent claims. Can you address that? Right. So that's not actually the harmless error argument that they ever make. I think the version that you're describing is a different theory of how Avinasiv would no, it's not the point where you transition to active. It's something after the point where you've transitioned to active and you've also received a bandwidth grant. And they've never made that argument. They don't even make that argument here on appeal. I know this is unfair, but what would be wrong with that argument? What would be wrong with that argument? Well, first of all, there are lots of procedural things wrong with that argument, right? We're standing here on appeal. That's why I said it wasn't fair. But in addition, I think it's still not consistent with the claim limitations because then you would not be sending the request while you're in the grant pending absence state, right? So I think you would have to, I would have to see a specific theory, Your Honor, of exactly what they're pointing to and how it would map out before I could say what exactly would be wrong with it. Frankly, it's not one that they've ever put forth. So it's hard for me on the fly to tell you what claim limitation it would not meet. But I assume, and I think- Well, let me try. We know that at the bottom of the triangle, going from inactive to active, you first have to make a request for the bandwidth. And we also know that request is going to have to be granted before you start transmitting data. So you have the request, you have the grant, and then you have transmission of data. Right now, it's your argument that even if the request has to happen before ABI-NASA transitions to active, the grant happens during active. Or at a minimum, the reference is silent as to where the grant happens. Is it before or after you transition to active? But nevertheless, these are the same kinds of operational steps that are going on in your claim. Request for bandwidth, grant of bandwidth, and then finally transmission of data. So the underlying operational steps are identical in ABI-NASA and in your claimed invention. It's just a matter of this metaphysical transition between two states, whatever that means. And it would, even if ABI-NASA is silent as to where the grant occurs in the inactive or the active state, it would be obvious, painfully obvious, to have the grant happen first before ABI-NASA formally transitions to the active state. Because there's really no functional difference, no operational difference to ABI-NASA where the grant of the bandwidth request occurs in its inactive state or its active state. No difference at all. And I do disagree with that, Your Honor. I understand the argument as you've articulated it, and I think there are several problems with it. First of all, it would not be obvious because ABI-NASA expressly went down a particular different path, which is, let's do the bandwidth grant later, and if we run into a problem of collision, let's deal with that collision problem, right? Whereas the 991 patent says, let's avoid that collision problem. Well, let's assume for the moment that ABI-NASA doesn't really explain where the grant occurs. We know that there must necessarily be a grant of the bandwidth request before data starts getting transmitted, but we don't know exactly, because ABI-NASA isn't clear exactly when that happens. Well, I think it is clear because I think that's what the bottom of 1312 to 1313 is talking about. But let's put that aside for a moment because I think it's a little hard to prove that issue in my remaining time. I'll leave it to the Board's consideration. Going down the path that Your Honor is describing, and I'm sorry, I meant the court, going down the path that Your Honor is describing would also just vitiate the transitioning limitation, and it would set a precedent that these kinds of limitations where you move from one state to another state are somehow not patentable. I'll say that argument was never raised before appeal by the appellee. I'll also say that if you look at ABI-NASA, SIN, every reference in this proceeding, every other prior art reference talks about state machines and states, and so we know that to those of skill in the art, state machines and transitions between states are absolutely relevant, and they define the way that these systems are architected. So to say here for purposes of patent law that somehow they're trivial and irrelevant flies in the face of how people of ordinary skill design these systems and conceive of these but maybe not all of it, but some of it. SIN, you have to win on SIN as well. Now on the assumption that the Board, if I understand it right, found, rejected your argument about SIN basically by rejecting your claim construction point. Assume for the moment that that was wrong. Do we vacate and remand, or is it clear that we would reverse on that? And I guess I have in mind, I'm not entirely sure what's, this is a, the relevant material that's being cited is about column four lines 49 to say 59, being generous I think, exactly what it says about whether SIN transmits some information in the transition state, and so that's a kind of a factual question. Is that really clear what's going on there? And second, these are method claims. Even if the packet, what's it called, the packet standby, is that the? Yes, your honor. The packet standby, in the packet standby state, it could transmit something or can. Why might it not operate in a way that it doesn't and therefore come within the method claims, which means if it runs a single time performing the steps without transmitting, might it not fall within the method? So your honor, I'll try to address as briefly as I can. The short answer is it is undisputed by the appellate that the factual predicate to SIN not meeting the claim limitation is there in SIN. So they don't dispute that point, and the board didn't dispute that point. It's all about the claim construction, and so if this court finds that the claim construction was incorrect, which it is because it's taught against by the specification expressly, then there's no remaining dispute as to the factual issue of whether SIN meets the proper claim construction. We put that forth in our opening brief, and they did not dispute it, and the reason is that in order to meet the claim limitation, you have to be in a state, in a grant pending absence state, where you do not have a bandwidth grant, and SIN does have a bandwidth grant, and so the mere existence of the bandwidth grant violates the grant pending absence state, regardless of whether you use the grant or not. We'll restore your rebuttal time. Thank you, your honor. Mr. Peterson. Thank you. May it please the court. Judge Chin, I do think you identified what is the critical question, which is the significance of that arrow between the inactive state and the active state. Can we just, because I think we can get SIN out of the way quickly, I just want to make sure I understand. If we disagree with the board's claim construction as to, you know, the ability to transmit data in the so-called grant pending absence state, then is, do we no longer have to worry about SIN? We would just reverse that aspect? There are two different aspects, I think, of the construction, my friend, as opposed for SIN, so I think you could affirm, or at the very least, you'd need to remand to the board on that. There are two different aspects of this. One is whether you can have access to bandwidth when you're in what SIN calls its packet standby state. The other is whether you can transmit upstream data when you're in SIN's packet standby state. Now SIN does teach that it has access to bandwidth in the packet standby state. If you look at SIN, though, column four, this is appendix page 1336, and I'm looking at lines 50. My understanding of claim construction. Well, yes and no. The problem here is that this claim construction argument was never thoroughly developed by WPI below. If you look at WPI's arguments to the board, if you look at its opening brief, you will not see any arguments about the significance of the name grant pending absent. In fact, what you'll actually see is appendix pages 2158 to 2159 is when WPI developed this argument below. They didn't say you need to construe the claims this way. What they said is it was about the timing of the transition between a grant pending state and a grant pending absent state. So we do think you would need to actually remand to the board if you're going to say this is the right claim construction to determine whether there's actually evidence under that claim construction. SIN doesn't require actually transmitting data in its packet standby state. SIN says you can either transmit data, or this is line 63, when the base station receives a... Which column is this? Column 4, appendix page 1336. So SIN can have its original bandwidth reallocated, and that's going from its packet standby state to its packet transfer state. Either when a first one of the packets is received by the base station, that's transmitting data, or when the base station receives a control packet requesting more bandwidth. I'm sorry, I'm Yes, sir. That is line 58 through line 63, beginning with the base station receives the packets and reallocates the original bandwidth to the mobile station when a first one of the packets, so again that would be the data transmission, is received, or when the base station receives a control packet. So I think if you were to accept the broadest form of my friend's argument, which is that you're not permitted to have any bandwidth whatsoever, SIN does unquestionably have bandwidth when it's in its packet transfer state. SIN doesn't however require transmitting data in order to move from the packet standby state to the packet transfer state. That's teaching there is that you can send a control packet instead, requesting more bandwidth. I'm confused, so what's the purpose in SIN for having that reduced allocation of bandwidth during the packet standby state? Well, you can do one of two things with it. I think SIN teaches primarily that the reduced bandwidth allows you to immediately transmit data, or as SIN teaches here, you could alternatively transfer a control packet and use that control packet to request more bandwidth. Again, this wasn't fully developed before the board, largely because of how WPI made these arguments. I think if you disagree with the board's claim construction, you would need to remand. Just briefly on SIN, the name grant pending absence. Is this passage something that you cited below? No, and this wasn't, again, this wasn't focused on before the board, because WPI never argued this as a claim construction. They simply argued about the transition from the grant pending absence state that sends packet transfer state, packet standby state, into the packet transfer state. So we didn't have reason to develop these arguments before the board. With the name grant pending absent, I think the problem with my friend's argument there is that he's reading the word pending out of it. What he wants to say is that grant pending absent state means that you're not allowed to have any bandwidth when you're in that state, and I think if you look at the claims of the 991 packet, you'll see that that's not quite what it means. So you'll find the 991 packet, it's appendix page 123, line three to four. So you're operating the CPE in a grant pending state wherein the CPE awaits receipt of a bandwidth grant. So you are awaiting receipt of a bandwidth grant and therefore you have a grant pending and you're in the grant pending state. When you look at line eight to nine and then line 14 as well, you transfer into the grant pending absent state when you have no pending bandwidth request. So the grant pending absent state doesn't mean that you don't have bandwidth. It simply means you don't have a pending bandwidth request, and you see that as well in the specification when it's talking about piggybacking and hence the name of the state. That's appendix page 121. And then it also talks about no transmission of data during the grant pending absent state. That's right, and I think that is the strongest argument. And the board said there's nothing in the claim that precludes the transmission of data in the grant pending absent state. The board said that, yes. So let's assume that the court disagrees with that. If the court disagrees with that, I do think you'd need to remand to ask about SIN's disclosure of the control packets. Do you have some defense of that board statement? I think it's the right statement that this is simply disclosure of a preferred embodiment and nothing in the claims precludes this. So when you look at this, every time it mentions don't send data in this state, it also simultaneously mentions unicast polling. Now when you look at the claims, everyone agrees, my friend agrees, that the first type of bandwidth request that is mentioned in the claims is not unicast polling. It can be broader. This is a case where the claims are written more broadly here than this preferred embodiment from the specification. We also have the language in column eight of the specification talking about alternative embodiments. Appendix page 121, looking at lines 11 to 15, the invention can be embodied in a method for controlling communications using the state machine described above and then skipping to 14 to 15 and in various other embodiments, and you see going down on 35. Although preferred embodiments are disclosed, many variations are possible which remain within the content, scope, and spirit of the invention. The standard here is broadest reasonable interpretation and the question here, if we're talking about line from the specification isn't reflected in the claims, is there a clear disclaimer to one of skill in the art? And I'd suggest that given that language in column eight, it's impossible to find that this is a clear disclaimer. I'd also note this is a common specification shared with not just the 991 patent but also the 051 and the 256 patents. Now recall, those two patents don't require a grant pending absent state at all, much less a grant pending absent state in which no data is transmitted. So it's quite odd to say this particular embodiment, which requires a grant pending absent state, disclaims all other embodiments to one of skill in the art. This is why we have claims to define the scope of the invention. Let me turn to the combination of A, B, and C in DOCSIS 1.1 unless there are further questions about CIN. And that's the line on appendix page 1328 connecting the inactive state to the active state. Now my friend's argument based on appendix page 1312 is that A, B, and a C transitions into the active state immediately and doing absolutely nothing else after receiving an opportunity to transmit a non-contention request. Yet this line between inactive and active shows non-contention request on there. So the question is how do we read the state machine? I think the right thing to do is look at the testimony of Mr. Loam who is WPI's expert. You can find this on appendix page 2413 and he offers testimony about how state diagrams should be read. Usually when you draw a state diagram, especially a formal one, the arrows are labeled with the thing that causes the transition. You can also look at WPI's brief. I think page 29 is figure 2 from the patent. Figure 2 from the patent illustrates a state machine reflecting these claims. There's an arrow there from the grant pending absent state to the grant pending state. That arrow is labeled with grant. The same grant that my friend contends has to occur in the grant pending absent state. Turning to page 31 of WPI's brief, this is a diagram. Here's the problem. Let's cut to the chase. The board relied on this notion of the request being satisfied. That label in figure 9 is somehow proving up that both a request and a grant of Avinasov's inactive to active state. I'll be honest, that didn't really make sense to me. Why that request satisfied arrow going back the other way necessarily conveys to me that a grant of the bandwidth request is occurring in the arrow that's merely labeled request. I think what that implies, the request satisfied, is that there has been a bandwidth. There has been a request. There has been a grant. There has been transmission of all the data that was requested to be transmitted, but it doesn't tell me anything about the timing of the bandwidth grant vis-a-vis transitioning between an inactive state and an active state. That's right, and I do wish... So then it doesn't make any sense to me why the board leaned on this label, request satisfied, as answering the question of when does the grant of the bandwidth request occur. Because the board was answering WPI's argument that the transition occurs upon the opportunity to make a request. WPI has consistently argued that all you look at is that one sentence in appendix page 1312. Transition when there is an opportunity. So if WPI were right about that, you could be in the active state when there has been no bandwidth request. And I think what the board is saying there is we can infer by request satisfied that there must be a bandwidth request to get into the active state. It's the only way out of the active state. Now I'll tell you, I think the board could have pointed to many more things in the whether the board identified all the evidence supporting its findings. Well it wasn't clear to me that you pointed to anything else other than the request satisfied label. Well that is our expert's testimony. The question is what appendix page 1312 and appendix page 1328 mean to one of skill in the art. Did the expert ever refer to request satisfied? I thought that showed up in your petitioner reply. I think it looks like attorney argument. Our expert didn't refer to request satisfied. Our expert referred to what was meant by the line on 1312 of BNC. And you see that on appendix page 342. That's our expert's testimony explaining that upon receiving this opportunity, what happens is a BNC teaches that the device will request bandwidth, receive a grant, and thereby transition. What's the best paragraph your expert has? The best paragraph I think probably is from his deposition. Let me give you that. Well no, 8342. 342 is the top paragraph. Paragraph 234. Yes your honor. After receiving a contention-free opportunity, the MAC user will request bandwidth, receive a grant, and thereby transition from inactive to active. Right, so he's just saying that. Well he's saying that's what it means to him as one of skill in the art. On appendix page 2251 to 52, this is his deposition. Can you say those pages again please? I'm sorry appendix pages 2251 to 52. Mr. Lipov explained. I'm looking at lines 20 to 24. The unicast poll is received by the CPE when the system is in the inactive state. The request is then made, and when the non-contention request is made after the handshaking that occurs, you then move into the active state. I apologize, what are you reading from please? This is the deposition of Mr. Lipov. He's our expert. That was the column on the left, page 149, lines 20 to 24. Page 149. It's not clear to me what from Abinasov he's interpreting when he's making this statement, this declaration of what Abinasov teaches to him. So I think we've agreed there's nothing on appendix page 1312 that expressly says here is when Abinasov, when it goes through non-contention, makes the non-contention request, and when it receives the bandwidth grant. So the question is what is what is disclosed on appendix page 1312 mean to one skill in the art? How does one of skill in the art read those two things in combination? And this is our expert testifying. His understanding is when Abinasov says upon receiving a contention-free opportunity to transmit a bandwidth request, you transition into the active state. What he understands that to mean is that... What's the line on A1312? The top line is when the MAC user receives data to be transmitted, the MAC user transitions... What line? I'm sorry, that's line one to three. Transitions into the active state upon receiving a contention-free opportunity to transmit a request. And the question is simply, does that mean, as my friend suggests, you immediately transition into the active state and you make the request and receive bandwidth in the active state? Or to one of skill in the art, does it also teach that you make the request, handshake, and receive bandwidth, as our expert says, and then transition into the active state? Where's the discussion that handshaking equals receipt of bandwidth? I believe you see that on 2252. I'm sorry, the handshaking mention is on 2251. Right, but I don't... And I'm asking what that means. You've equated it to a grant as opposed to... You've equated to a grant. How do we know that that's what it equates to? I think the expert's testimony on 2252, it's page 153, lines 3 to 13. As I understand what a BNC teaches, after you receive a contention-free opportunity to make the request, there are a number of things that happen. You request the bandwidth, receive the grant, transmit the information, then you transition from the inactive state to the active state, where you're now waiting for the actual grant for data, and you send the data up. So you transition from inactive to active as a result of receiving the contention-free opportunity and making that request. So what do you think Abin Nassif was trying to tell us when he told us at 8.13.12 that the MAC user transitions into the active state upon receiving a contention-free opportunity to transmit a request? That sounds like as soon as you get the opportunity to make a request, you're already now in active state land. Then you can make the request for transmission of data. Then you get the request granted. Then you can finally transmit data. And all three steps occur in the active state. Well, I think one of skill in the art understands, it's implied, but one of the skills in the art is that you are receiving that opportunity, and what you do when you receive that opportunity before you transition is to make the request and receive the grant. And when you look at Figure 9, that arrow is labeled non-contention request. Right. It doesn't say non-contention request accepted, right? There's another arrow in that same Figure 9 going down from the contention state to the active state, where it says request accepted. Now we know this Aby Nassif inventor understands how to label arrows request accepted, and it did so there. It did not do so on that bottom arrow, where it just says non-contention request. That's right, and that's why it actually supports us. Because if you look... That's hard for me to believe. Let me help, because the label there also says request denied with a contention request, and that's the difference between a contention request and a non-contention request. I'm lost. So non-contention requests can be denied. Non-contention requests are actually what my friend was talking about when he was reading from the bottom of 13.12 over to 13.13. So non-contention requests can fail. They can collide with each other. Aby Nassif teaches they might not work. So with non-contention requests, there's no guarantee that you get the bandwidth. With non-contention requests, you might ask for it and your request might not go through. The answer might be no. But with contention... Sorry, with contention requests. With non-contention requests, you don't actually need to show request accepted. That's because a non-contention request is always accepted. Where did you say this in your petition or your petitioner reply? I didn't see any of this. This is certainly what was argued by our expert, and when he was explaining his understanding of the operation of Aby Nassif, he never suggested that there was a way that a non-contention request could be denied. When you look at the record references that I showed you, what he said is all three of these things happen in sequence every time. There's a non-contention opportunity or an opportunity to make a non-contention request. There is a non-contention request, and that non-contention request is answered with a grant of bandwidth. So when you look at our Yes, but we don't know why certain things happen before the active state transition occurs. The last thing I'll point you to on this, and maybe this is helpful, is just understanding that nothing in Aby Nassif suggests that you do not have bandwidth when you are in the active state. When you look at its discussion of the contention requests, this is lines 10 to 11 of appendix page 1312, it explains that upon making a successful reservation in the non-contention state, the MAC user transitions into the active state. So we know at least when you're going through contention, you only go into the active state after you have already reserved bandwidth. And I'll also point out the testimony of Mr. Loam. He was the plaintiff's... That discussion is going from the contention state to the active state, right? That's right, but it provides at least... About the inactive state to the active state. But it's a question of what it means to be in the active state. Are you in the active state when you have bandwidth, or are you in the active state when you are making a bandwidth request? So we know at least going through contention, you have bandwidth when you're in the active state. We asked their expert what his understanding was of the active state. You see this on appendix page 2435. What is your understanding of the active state? He answered, it is the state in which data is transmitted. He didn't say the active state is the state in which a non-contention request for bandwidth is sent. He didn't say the active state is the state in which a non-contention request for bandwidth is received. He said the active state is the state in which data is transmitted. Unless the panel has further questions. Thank you very much. Your Honor, I'd like to point you to appendix 1311 because I just want to clarify that everything in appendix 1311 to 1313 is talking about Abinasi's figure nine. And so I just want to make sure there's no doubt that those two things are one and the same. They're not different teachings or alternative teachings. At the bottom of 1311, it explains a reservation MAC-based protocol can be represented at a high level by a state diagram for each MAC user as shown in figure nine. The MAC user starts in the inactive state and remains there so long as it has no data to transmit or it is waiting for an opportunity to transmit a request. And as Judge Chen rightly pointed out from there, the language that comes next, which is at the heart of this conversation, states that the transition is made upon the availability of the opportunity. Now, there's been a lot of discussion about whether figure nine in fact teaches that the transition happens based on the opportunity or the request actually being made. As we discussed in my opening argument, that's irrelevant. It doesn't matter because what's necessary, that would not be sufficient to meeting the claim limitation, right? The claim doesn't simply require requests to be made, so it doesn't matter if it's the opportunity that triggers the transition or the request itself. It's about when is the bandwidth grant given. I think your friend on the other side said for the non-contention request, a non-contention request is never denied. So to make the request is automatically, but perhaps not instantaneously, to get the grant. Do you disagree with that? I disagree with the relevance of that in terms of what it tells us about the timing of the transition. Right, I think you understand that you just changed the question. Do you disagree with the proposition that in this AVID-NACIF, every non-contention request is granted? There may be a lack, but is it true or do you disagree that it is granted? The answer to that is at the bottom of 1312 and the top of 1313, where it explains that there are three possibilities. My friend on the other side said that these possibilities that are taught here only relate to the contention pathway. That's not correct. There's no such evidence in record. In fact, the reading of it demonstrates that it applies to any situation where there's an opportunity to make a request and a request is made. This passage shows that either there can be no request when there's an opportunity, or the request can be successful, or there can be a collision. It also explains that if there is a collision, collisions are resolved. It is correct that ultimately, one way or another, the bandwidth grant will be provided. But the question is, at what point in the process? There's no dispute whatsoever that there has to be a bandwidth grant for the data to be sent up and that data can be sent up. Once you enter into non-contention-free grant land, you can send up your data. Since you can get to that place at some point, you have to have a bandwidth grant. But the question is, when does that happen? And does it happen in a way that meets the transition requirements and the timing requirements of the 991 patents claim limitations? And the answer to that is no, based on Figure 9 and the teachings in 1312 to 1313. And importantly, the Board has no contrary finding, really. They have no basis to support their decision. They have two things. One is the request-satisfied error, which Judge Chen rightly pointed out doesn't work, and we've briefed that in detail. The other is they rely on two sections of DOCSIS 1.0, 6.4.1.1.1 and .1.1.5. Neither of those has anything to do with this transition issue. We explained that in our opening brief and it was not disputed or contested in the response brief. And the expert testimony that your friend on the other side relied on, is it your view that it doesn't say what your friend said it says or that it says it, but it's so conclusory that it can't support anything? Well, it is the latter, because he does make a statement about when he contends these transitions happen, but there's no basis for the statement. And certainly in one iteration, there's no explanation. It's just a mere statement. And in the second iteration, it has to do with the handshaking. And there's, again, no explanation of how you get from that. That does not logically follow. Handshakes don't require bandwidth grants, and there's no demonstration in their evidence to the contrary. So it is... Is the handshake something like that screeching noise on a fax machine that says I'm listening or something? Or what is the handshake? That might be one way to think of it. The handshake is a communication between the client and the base station that is a sort of authentication. And one thing that's really important to keep in mind... To explain that a handshake is not the same as a grant of the bandwidth to start submitting data. Frankly, Your Honor, this was not an issue that was briefed. And so it's not in my memory what exists in the record on that point. But I will say that it's important on this issue to recognize the distinction between control channel communications and data channel communications. And these claims, as we have said in our briefing, are all about what happens with respect to data and payload data. There can be control channel communications and grants of control channel communications, and that might be a part of what happens with a handshake. But that doesn't demonstrate the existence of a bandwidth grant on the data channel, which is what we're talking about. I will thank you then for your argument, and thanks to all counsel, and say the case is submitted. Thank you, Your Honor.